## Parker *versus* Jacoby.

1. A mortgage given as collateral security for the payment of present liabilities and future advancements, which the mortgagees were under no contract to make, takes rank as to these future advancements, and as against other mortgages and judgments, from the date of such advancements, and not from its own date.
2. In Pennsylvania, a prior incumbrancer in making future advances is bound to take notice of a prior and intervening recorded incumbrances, in the same manner as if he were about to accept of a new and independent liability from the party, without reference to any prior incumbrance.

ERROR to the District Court of the *City and County of Philadelphia.*

The opinion of the court was delivered by

READ, J.—On the 18th August, 1854, S. F. and G. W. Jacoby gave to the Bank of Montgomery County a mortgage for the sum of $30,000, conditioned for the payment of $15,000, with lawful interest thereon, on the first day of April, 1855. Upon this mortgage, which was recorded on the 18th of August, 1854, was indorsed the following stipulation or agreement :—

"This mortgage is given as collateral security, to the Bank of Montgomery County, for all notes, bills of exchange, drafts, and all other obligations discounted or hereafter to be discounted by the said bank for Samuel F. Jacoby & Co., or for

the within named mortgagors, or either of them, and also to se-
cure their or either of their indebtedness from time to time to
said bank, *and all their or either of their liabilities of whatever
nature or kind, to said bank, that exist at the present time, or that
may exist at any time hereafter.* And after payment of them
or either of them, of all such debts and liabilities to said bank,
this mortgage to be cancelled and satisfied."

This stipulation or agreement does not show that the mort-
gage was given to secure the payment of notes or bills, and
the renewals of the same until they should all be paid, and
does not therefore bring the case within the ruling in *Gault* v.
*McGrath*, 8 Casey, 392. On the contrary, it was expressly in-
tended not only to cover existing liabilities, but also after they
were entered, discharged, and satisfied, any new liabilities there-
after created, or, in the language of the instrument, " that may
exist at any time thereafter." Its object was therefore to se-
cure not only present but future advances by the Bank of
Montgomery County, which future advances they were under
no contract to make, but which it was at their option to make
or not as they thought proper.

As to future advances, therefore, and as against other mort-
gages and judgments, this mortgage only took rank from the
date of such advances, and not from its own date; our own
cases, and particularly that of *Ter Hœven* v. *Kern*, 2 Barr, 96,
show conclusively this to be the law. ' The case of *Rolt* v. *Hop-
kinson*, 4 Jur. N. S. 919, decided by the Master of the Rolls, on
the 29th May, 1858, and affirmed on appeal[1] by the Lord Chan-
cellor, on the 9th November, 1858, id. 1119, is directly in point,
for the language of the stipulation in the prior mortgage is sub-
stantially the same as in the present case. There both the
first and second mortgagees had notice of each other, and the
advances were made by the prior mortgagee, after the date of
the subsequent mortgage, and with full knowledge of it, and it was
held that the subsequent mortgagee was entitled to priority for
his advances, made before the advances of the prior mortgagee,
with full knowledge of his security. This solemn decision,
with the case of *Shaw* v. *Neale*, 20 Beavan, 165, 6 House of
Lords Cases, 581, entirely overrule the anomalous case of
*Gordon* v. *Graham*, 2 Eq. Cases, ab. 598, before Lord Cowper.
In Pennsylvania, a first mortgagee thus situated is bound to
take notice of junior and intervening recorded incumbrances,
in the same manner as if he were about to accept of a new
and independent liability from the party, having no reference
whatever to prior incumbrance. 2 Barr, 99.

The earliest liability held by the Bank of Montgomery County
is of the 24th October, 1857, and the latest of the 6th March,

---

[1] Since affirmed in House of Lords.   8 H. Lords Cases, 514.

[Kauffman *v.* Fisher et uxor.]

1858.   There was an attempt to show that these liabilities were the renewal of liabilities, commencing with the inception of the mortgage.   The burden of proof was on the bank, and, in the opinion of the anditor, they entirely failed, and they asked for no issue to try the fact, and the report of the auditor was confirmed by the court.   There is nothing in the evidence printed (and the whole ought to have been submitted to us, and not a part) to induce us to say that the conclusion arrived at was not a correct one.

The second mortgage to B. W. Richards for $15,000 was dated November 12, 1855, and recorded on the same day, and was given to secure sales of marble, by certain persons, to the mortgagees, which they contracted to make at the market price, for a period of two years, taking the promissory notes of the mortgagors for the same, and also indorsements of notes by them for Jacoby & Co., for purchases of marble from other persons, such sales and indorsements not in the aggregate to exceed $15,000.   There was, therefore, an absolute contract to make these sales, and to furnish those indorsements, and of course they would be referred back to the date of the mortgage when made.   *Morony's Appeal,* 12 Harris, 372.

It appears, however, that the notes secured by this mortgage are all dated from the 19th November, 1855, to 4th June, 1857, and of course represent transactions prior to the liabilities held by the Bank of Montgomery County, and *qui prior est tempore prior est jure.*

Decree affirmed, and appeal dismissed, at the cost of the appellants.