## Estate of James P. Dahlem, deceased.   William Yost's Appeal.

*Mortgage—Contract—Assignment for creditors.*

After D. made an assignment for benefit of creditors, he entered into an agreement with C., one of his creditors, that C. should raise the necessary money, settle with the creditors, get their consent to a reconveyance, and disburse the money to them.   This agreement was carried out so far as to pay all the creditors who had been discovered; the assignee was discharged by the court, and the estate reconveyed to D. who executed a mortgage to Y., and on the same day gave a direction in writing to Y. to pay the money to C. to be used by him as the agreement directed.   On the same day C. receipted to Y., in full for the whole sum, and on the next day Y., by C.'s direction, paid out to the creditors all of the fund, except what was due to C. himself under the agreement.   Four days after the date of the mortgage D. died, and some time later Y. paid the rest of the money to C.   Subsequently other creditors who had been overlooked appeared.   The real estate covered by the mortgage was sold by order of the orphans' court, and by agreement of all the parties the purchase money was paid into court, and it was agreed that the fund in so far as the lien of the mortgage was concerned should represent the land.   *Held*, (1) that as C. had fully complied with the agreement, D. could not have revoked his consent to the payment of the money by Y., and therefore his death could not have that effect by implication; (2) that payment by Y. to D.'s creditors was the same as a payment to C.; (3) that C.'s allowing the money to remain temporarily in Y.'s hands did not alter his rights; (4) that the transaction having been executed during D.'s life, his death gave his creditors no stronger claims than he had himself; (5) that the circumstances of the case did not make the mortgage for future advances only, but, if they did, the mortgagee having bound himself to make the advances, was entitled to a lien from the date of the mortgage, and not merely from the date of the actual advances; (6) that, as the fund was not in court for general distribution, the mortgagee was entitled to recover out of the fund what he would have been entitled to recover on a scire facias against the land; (7) that an allowance of the taxes out of the fund was error.

Argued Jan. 30, 1896.   Appeal, No. 258, Oct. T., 1895, by William Yost, from decree of O. C. Allegheny Co., June T., 1895, No. 50, dismissing exceptions to adjudication.   Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ. Reversed.

Exceptions to adjudication.

The auditing judge, OVER, J., found the facts to be as follows :

The fund for distribution arises from the sale of real estate of the decedent under order of this court for payment of his debts. It was subject to a mortgage dated June 1, 1894, given to Wm. Yost, Esq., to secure the payment of $4,302.49.

The administrator agreed with the purchaser that all liens should be divested by the sale. As it was doubtful whether the sale divested the lien of the Yost mortgage, the purchaser refused to pay the purchase money until it was satisfied on the record. The administrator being informed that there was a defense to the mortgage declined to pay it, and Yost finally satisfied it, upon the agreement that $5,000 of the purchase money should be paid into court to which the lien of his mortgage should attach, he to prosecute his claim upon the mortgage in this court as if a scire facias had been issued thereon. The money so paid into court is the fund for distribution.

The material facts connected with the execution of this mortgage are as follows: J. P. Dahlem, the decedent, on the 2d of January, 1894, made an assignment for the benefit of his creditors to his nephew, John A. Long. He subsequently applied to J. B. Corey of the Corey Coal Co., one of his creditors, to procure a loan for him by mortgage on his real estate to raise money to pay his creditors, so that he could have his property reconveyed to him. On the 16th of April, 1894, he, Long and Corey entered into a written agreement which provided (inter alia) that a composition should be made with Dahlem's creditors and their consent obtained to the reconveyance of his estate ; that after such reconveyance Dahlem should execute a mortgage to such person as Corey should designate in a sum sufficient to discharge his floating indebtedness, estimated at $4,000 ; that Corey should be authorized to disburse the proceeds of the mortgage in payment of the debts and return any overplus to Dahlem ; that the expenses of negotiating this loan and examining the title should be $150 ; that Corey should receive for his services any rebate or discount allowed by the creditors, and that his claim (Corey Coal Company) should be paid in full.

Corey aided in procuring the assent of the creditors reported by Dahlem and Long ; there were, however, other creditors, and upon the 31st of May, 1894, after public notice, the common

pleas court discharged the assignee and ordered a reconveyance of the assigned estate to Dahlem.

On June 1, 1894, a mortgage and bond was prepared by Wm. Yost, Esq., a son-in-law of Corey, who had agreed to advance the money, the sum of $4,302.49, being the amount of the reported debts of Dahlem, with the addition of $150 expenses provided in agreement, and $25.00, Yost's fees, for procuring the discharge of the assignee.

This bond and mortgage was taken to Dahlem's house, where he was lying very ill with typhoid fever, and executed by him, making his mark in the presence of his physician, Long, his nephew, an alderman, Corey and some others, Mr. Yost not being present.  The alderman filled out and signed a certificate of acknowledgment for husband and wife, certifying that it was taken on the 1st of June, 1894, and on the other side of the paper certified in a single acknowledgment that it was taken on the       day of June, 1894; red lines were drawn over the double acknowledgment, and the mortgage and single acknowledgment, leaving the day of the month blank, were recorded on June 1, 1894.

On June 2, 1894, Yost signed checks payable to the order of all the creditors reported by Dahlem and Long (except the Corey Coal Company and Boyd & Son) for the amounts they agreed to accept, aggregating $1,918.17, leaving in his hands, after deducting his fees of $175, $2,209.32 due on the loan. These checks were delivered to Corey's clerk on the 2d and 3d of June, 1894, and checks amounting to $635.59 were paid by the bank prior to Dahlem's death on the 4th of June.  On the 4th of August, 1894, Yost gave Corey a check for $1,107.71, the amount of the Corey Coal Company's claim, and Boyd & Son's claim assigned to Corey for 50 per cent of its face.  This left in his hands $1,101.61, being the amount of rebate allowed by Dahlem's creditors which Corey was to receive for his services under the agreement with Dahlem.  Corey presented Yost with $500 of this amount and received a check for the balance.

### CONCLUSIONS OF LAW.

It is objected to the claim upon this mortgage, (1) that the acknowledgment recorded with it is defective in omitting the day; (2) that Dahlem was mentally incompetent to execute it;

(3) that in no event can there be a recovery for more than was advanced upon it prior to Dahlem's death.

If the mortgage was not properly acknowledged, the record is a nullity, and the mortgagee would have no lien upon the fund, other than that of a general creditor: Myers v. Boyd, 96 Pa. 427.

Whilst the first certificate is in the form required for the acknowledgment of a married woman, it contained all the requisites of a single acknowledgment, and had it been recorded with the mortgage, there could be no question as to the validity of the record. The certificate which was recorded, however, omits the day of the month. The mortgage was dated, executed and recorded on June 1, 1894. The presumption is that the officer taking the acknowledgment performed his duty, and he will not be supposed, without proof, to have taken it before the mortgage was executed: Cover v. Manaway, 115 Pa. 345. Applying this presumption in this case, an examination of the record shows that the acknowledgment must have been taken on the 1st of June, 1894, and if the certificate be defective in omitting the day, the defect seems to be cured by the record. There does not appear to be any case in this state in point; but in Maryland, where the statute is substantially like ours, it was held in Kelly v. Rosenstock, 45 Md. 389, a case directly in point, that "where the deed or mortgage is dated and recorded on the same day, and the date of acknowledgment is blank, no date is necessary in the acknowledgment, because the facts preclude any possibility of a different date." See also Carpenter v. Dexter, 8 Wallace, U. S. 526.

There is a line of cases also which hold that a substantial compliance with the statute is sufficient: Ross's App., 106 Pa. 82; Hornbeck v. B. & L. Ass'n, 88 Pa. 64; Luffborough v. Parker, 12 S. & R. 48; Watson v. Bailey, 1 Binney, 479, 480.

The question is a close one, but we are of the opinion that the certificate of acknowledgment, taken with the record of the mortgage, shows a substantial compliance with the statute and that the record is valid.

The evidence shows that Dahlem was very weak, both physically and mentally, when the mortgage was executed, and was incompetent to have transacted the business connected with the

mortgage, if it had originated on that day. But it is probable that as the agreement in regard to it had been made when he was entirely competent, that he was sufficiently conscious of the transaction to make its execution valid. And whilst there are very grave doubts as to his mental competency at the time of its execution, as the legal presumption is he was competent, the auditing judge so finds. But even if he were incompetent, the mortgagee can recover the amount actually paid to Dahlem's creditors before his death. The amount was advanced by Yost in good faith, without knowledge of the mortgagor's incompetency, and the weight of authorities seem to be that a mortgagee under such circumstances can recover on a mortgage given by a lunatic: Beals v. See, 10 Pa. 56 ; Kneedler's App., 92 Pa. 428 ; Wirebach v. First National Bank, 97 Pa. 543.

The next question is, Can Yost recover the full amount of the mortgage? No money was paid when it was executed, and it was in effect a mortgage to secure future advancements. There was no privity of contract between Yost and Dahlem's creditors, and he was not bound to pay any money to them. By the terms of agreement of April 16, 1894, and the order executed contemporaneously with the mortgage, Yost was to pay the proceeds to Corey as Dahlem's agent. He did deliver to Corey, prior to Dahlem's death, checks payable to the order of his creditors amounting to $1,918.17, although only $635.59 of these checks were paid by the bank prior to Dahlem's death. The possession of them by Corey as agent was equivalent to Dahlem's possession, and constituted a valid payment by Yost on account of the mortgage loan. But there remained in Yost's hands after Dahlem's death, after deducting his fees, $2,209.32 of the money he agreed to loan. This was not paid to Corey until two months after Dahlem's death, of which Yost had personal knowledge ; unless then Corey's agency was coupled with such an interest as would make it irrevocable by the death of his principal this was not a good payment. Was the agency coupled with such an interest? Mechem on Agencies, 242, quoting Chief Justice MARSHALL, says : "What is meant by the expression of a power coupled with an interest, is it an interest in the subject on which the power is to be exercised, or is it an interest in that which is produced by the exercise of the power? We hold it to be clear that the interest which can protect a

power after the death of a person who creates it, must be an interest in the thing itself; in other words, the power must be engrafted on an estate in the thing."

A power to collect money, etc., for the principal, the attorney to receive as compensation one half of the net proceeds, is not a power coupled with an interest, and is revocable: Hartley's Appeal, 53 Pa. 213.

An interest in the proceeds to arise as compensation for executing the power will not make it irrevocable: Blackstone v. Buttermore, 53 Pa. 266.

A power of attorney not containing words of conveyance or assignment, but simply authority to sell and convey, being given as collateral security for the payment of certain notes and authorizing the sale of the property,—in case of default, and reimbursement of the attorney, power revoked by the death of the principal: Hunt v. Rousmanier, 8 Wheat. 174.

As the only interest Corey had was for his compensation, it follows that the agency was revoked by Dahlem's death, and that the payment to Corey on August 4, 1894, of the balance due Yost on the mortgage loan, was unauthorized. He can therefore only recover $2,093.17, the amount paid, including his fees, prior to Dahlem's death.

The city of Pittsburg has presented a claim for taxes upon the real estate sold for the years 1894 and 1895, which lien was divested by the sale, but it is alleged that the purchasers agreed to pay the taxes for 1895, and that they should not be allowed out of the fund. If such was the agreement, as it does not appear the city was a party to it, it would not be bound by it; and as the taxes are a lien upon the fund, they must be paid out of it.

This account was filed in less than a year after the decedent's death, and as the statutes contemplate that general creditors shall have a year in which to present their claims, they were not heard at the audit, but as the claims now adjudicated are prior liens upon the fund, distribution will be made to them and the balance of the fund in court will be distributed to the administrator, to be embraced in its next account; upon the audit of which, Mr. Yost can be subrogated to the rights of the creditors paid by him after Dahlem's death, and participate in the distribution with the general creditors.

Under the agreement with Mr. Yost when he satisfied his mortgage, interest was to be paid him on the amount found to be due on the mortgage up to the time of final decree and payment; this was incorporated in the decree for the payment of the money into court. Interest on his claim will not therefore be computed in the decree, but can be at the time of payment.

*Error assigned* was in overruling exceptions to adjudication.

*Geo. B. Gordon*, of *Dalzell, Scott & Gordon*, for appellant.— The oneness of the transaction is as complete and effectual in law as if the mortgage had been given directly to the assignee or lien creditors in consideration of the deed of reconveyance: Dana v. Coombs, 6 Greenleaf (Me.), 89; Kennedy v. Baker, 159 Pa. 146.

After the delivery of Dahlem's order to him, Corey was personally liable to the creditors named in the order, upon his promises to pay them: Townsend v. Long, 77 Pa. 149; Stoudt v. Hine, 45 Pa. 30.

*J. P. Hunter*, for appellee.—The court did not err in refusing to award to the mortgagee any money except for the amount of the checks given by him prior to the death of the mortgagor, because: (*a*) The agreements and the order to pay at best constitute Corey the agent of Dahlem, and such agency was revoked by the death of Dahlem; (*b*) such agency of Corey was not an agency coupled with an interest; (*c*) neither the agreement, nor the order to pay singly nor together, operated as an equitable assignment of the proceeds of the mortgage to Corey; (*d*) the agency was not executed prior to the death of Dahlem: Story on Agency, sec. 481; Mechem on Agency, sec. 238; Kerr on Injunctions, 659; Christmas v. Russell, 14 Wall. 70; Geist's App., 104 Pa. 355; Bispham Eq. 250, 251; Watson v. Bagaley, 12 Pa. 164; Burger v. Burger, 127 Pa. 499; Rodick v. Gandell, 1 De G. M. & G. 763; Scott v. Porcher, 3 Mer. 651; Bell v. Ry., 15 Beav. 552; Bank v. Higbee, 109 Pa. 130; Morse on Banking, 304; Hunt v. Rousmanier, 8 Wheat. 204; Beans y. Bullitt, 57 Pa. 231; Hartley's App., 53 Pa. 213; Blackstone v. Buttermore, 53 Pa. 266; Houghtaling v. Marvin, 7 Barb.

(N. Y.) 412; Ter-Hoven v. Kern, 2 Pa. 96; Montgomery Bank's App., 36 Pa. 170; Taylor v. Cornelius, 60 Pa. 187; Nichols's App., 128 Pa. 428.

OPINION BY MR. JUSTICE MITCHELL, May 18, 1896:

The real estate was sold by order of the orphans' court for the payment of the debts of the decedent, but the validity of appellant's mortgage as a lien being disputed, the administrator, the purchaser and the mortgagee, with the sanction of the court, came to an agreement by virtue of which the purchaser paid the amount into court, the mortgagee satisfied his mortgage of record so as to clear the purchaser's title, and presented his claim here as if on scire facias in the common pleas. The fund therefore is a special fund representing the land as subject to the lien of this mortgage. Its special and restricted character in this respect is material to some aspects of the case, especially in regard to the claim for taxes.

The case so far as this appellant is concerned turns on the effect of the agreement of April 16, 1894, between Dahlem, Long and Corey, and the action of the parties under it. Dahlem had assigned his property to Long for the benefit of creditors, and the latter were dissatisfied with the assignee's management. Whether steps to have him removed were actually taken or only contemplated is not material. The intent of the agreement was to supersede the assignment by providing for the payment of what was termed by the parties "the floating indebtedness of the assignor." The agreement accordingly provided that Corey should raise the necessary money, settle with the creditors, get their consent to a reconveyance and disburse the money to them. This agreement was carried out. The assignee was discharged and the estate reconveyed to Dahlem, who executed the mortgage now in question to Yost and on the same day, June 1, gave a direction in writing to Yost to pay the money to Corey to be used by him under the agreement. Corey on the same day receipted to Yost in full for the whole sum, and on June 2 and 3, the latter by Corey's direction paid out to the creditors all of the fund except what was due to Corey himself under the agreement. On the following day, June 4, Dahlem died, and some time later Yost paid the rest of the money to Corey. Other creditors however having appeared (whether subsequent or

merely overlooked by Dahlem at the time of making the agree-
ment is not clear) the question arose whether the mortgage
was a lien for its full amount, or only for the sum actually paid
to creditors before Dahlem's death.  The learned court below
took the latter view, holding that the mortgage was in effect
only for future advances.  It therefore awarded the appellant
only so much of the fund as was paid during Dahlem's life, and
turned appellant and Corey over to their claims, whatever they
might be, against the general assets of the estate.

The correctness of this result depends on the nature of Corey's
claim to the money.  Under the agreement he was, as already
said, to secure the assent of the creditors to this mode of settle-
ment, and to see that it was carried out by disbursing the money
himself.  But in addition to this the debt of his firm which he
represented was to be paid in full, and he was to have for com-
pensation whatever discounts the other creditors allowed on
their claims.  In carrying out the arrangement he purchased
the claim of Boyd & Son who otherwise would not have con-
sented to the reconveyance.  Corey thus before the death of Dah-
lem had fully performed his part of the agreement, and Dahlem
had received the full consideration coming to him by the recon-
veyance of his estate.  He could not have revoked his consent
expressly nor could his death have that effect by implication.
As to him and his rights, the transaction was complete in his
lifetime.  As Corey was authorized to receive the whole of the
money from Yost, a payment in fact by the latter to him would
have been beyond question.  What was done was in effect the
same as a payment to Corey.  They agreed upon the disposition
of the money and carried it out by paying the creditors all that
was coming to them and leaving in Yost's hands the balance
that was due to Corey.  As already said if this balance had
been paid to Corey in Dahlem's lifetime it would have been a
valid advance of the money by Yost, and Corey could have re-
tained it as his own against Dahlem by virtue of the agreement.
Corey's allowing it to remain temporarily in Yost's hands did
not alter his rights.  If thereafter Yost had become unable to
pay the money on Corey's demand the latter could not have
recovered against Dahlem on his original claim or for his com-
pensation under the agreement.  As to Dahlem those claims had
been paid and Corey was turned over to the money in Yost's

hands.   He had receipted in full for it, it had become his money, and whether he demanded it at one time or another could make no difference to Dahlem who had no further claim to it.   As to him it had come to its proper hands under the agreement, and the transaction being thus executed during his life his death gave his creditors no stronger claims than he had himself.

We do not think the circumstances made this mortgage one for future advances only, but if they did the case should rather be put in the class of Moroney's Appeal, 24 Pa. 372, and Taylor v. Cornelius, 60 Pa. 187, where the mortgagee having bound himself to make the advances was entitled to a lien from the date of the mortgage and not merely from the date of the actual advances.   Here Yost had been notified in writing by the mortgagor to pay the money to Corey, had taken Corey's receipt in full, paid out part of the money at Corey's direction, and held the balance on his order.   As already shown Corey was not a mere agent of Dahlem whose authority could be revoked or was terminated ipso facto by Dahlem's death.   On the contrary he was entitled to hold the money as his own under the agreement, and Yost's taking his receipt in full and holding the balance for him, put Yost in contractual relation of responsibility to Corey and not to Dahlem for the balance.   He was therefore bound to carry out his arrangement with Corey notwithstanding the death of Dahlem.

The allowance of the taxes out of the fund was also erroneous.   As the learned court below awarded only a part of the fund to the appellant, the taxes were probably allowed out of the balance, without adverting to the special circumstances of the case.   The fund was not in court for general distribution, but was paid in by agreement for the special purpose of standing in place of the land as regards the lien of the mortgage. Whatever the appellant would have been entitled to recover on a scire facias against the land, he is entitled to have out of this fund.

The decree is reversed, and distribution directed to be made to appellant Yost for his claim in full.   Costs to be paid by the appellee, the Mercantile Trust Company, but without prejudice to its claim for allowance out of the estate on final settlement of its accounts.