# In the Matter of the Assigned Estate of Joel Neff. Appeal of the National Bank of Slatington.

*Judgment—Judgment note—Parol evidence.*

A condition in a bond given by a debtor to a creditor that the debtor will pay, when so required, all notes and other indebtedness on which he "is liable" in any way to the creditor, secures only debts existing at the date of the bond; not those afterwards contracted.

Where a judgment note is given to a bank to secure an existing indebtedness, an oral statement subsequently made by the debtor to the officers of the bank, in the presence of another creditor, that the judgment note was to cover later indebtedness, will not entitle the bank to claim that the judgment note covered such later indebtedness as against the other creditor, if the latter at the time the oral statement was made did not say or refrain from saying anything that induced action or inaction by the bank to its prejudice.

Argued Feb. 1, 1898. Appeal, No. 396, Jan. T., 1897, by the National Bank of Slatington, from order of C. P. Lehigh Co., Assignment Docket No. 1378, overruling exception to auditor's report. Before STERRETT, C. J., GREEN, WILLIAMS, DEAN and FELL, JJ. Affirmed.

Exceptions to auditor's report.

Joel Neff made an assignment for the benefit of creditors to Frank Jacobs on April 8, 1896. At the time of the assignment the assignor was the owner of considerable valuable real estate, situate in the county of Lehigh, which was sold by the assignee under an order of court for the payment of debts, and which discharged all liens on the property except first mortgages.

At the time of the execution of the assignment the judgments against said Joel Neff entered of record were as follows, and in the following order, to wit:

1. Frank Jacobs, No. 393, January term, 1896, entered April 4, 1896, for $925.

2. National Bank of Slatington, No. 405, January term, 1896. Bond dated July 19, 1893, entered April 6, 1896, for $30,000.

3. Thomas Kern, No. 411, January term, 1896, entered April 6, 1896, entered same day for $10,950.

The auditor reported that the net balance for distribution arising out of the proceeds of sale of the real estate after deducting all proper costs and expenses was $6,498.79, which he distributed as follows:

To Frank Jacobs, on his judgment No. 393, January T., 1896 . . . . . . $   955 55
To Thomas Kern, on his judgment No. 411, January T., 1896 (the balance) . . . 5,543 24

Total . . . . . . $6,498 79

The auditor refused to make any distribution to the judgment of the National Bank of Slatington, though entered on the same day with that of Thomas Kern, and prior in date and in time of entry.

On exceptions being filed to this report, the same was referred back to the auditor for the taking of further testimony. In his supplemental report the auditor makes no change in the distribution except that he deducts the expenses of the reference back from the amount allowed in his former report to Thomas Kern, thus making his distributive share $5,489.54.

Additional facts appear by the opinion of ALBRIGHT, P. J., which in so far as it is material to the present report, was as follows:

Is the Slatington National Bank entitled to have its judgment share in the distribution with that of Thomas Kern? Both were entered on the same day, April 6, 1896. The bond with warrant of the bank is dated July 19, 1893. The condition is that if Neff shall pay, or cause to be paid to the bank, " when so required by them, all notes and other indebtedness in which he is liable in any way to said National Bank of Slatington, and said· bank to have the right at any time to enter judgment and issue execution to secure said indebtedness, whether notes of the said Joel Neff are due or not."

The meaning of the words " is liable " is not affected by any other words in said condition. It is beyond argument that it provided only for indebtedness existing at the date of the bond. It would no doubt cover the case of renewals of evidences of such then existing debts: Appeal of Bank of Commerce, 44 Pa. 423. But it is conceded by the bank that none of the indebtedness when the judgment was entered existed at the date of the bond. It is claimed by the bank that it is shown by testimony that the bond covered indebtedness created subsequent to its date; that Neff so agreed. As to the said matter, Mr. Roper testifies that he was a director of the bank; that the financial standing of Mr. Neff was discussed; that in September or October, 1895, Mr. Gish, the cashier, Thomas Kern, aforesaid, and the witness were appointed a committee to see Neff in relation to his standing and notes in the bank; said committee met Neff at the bank; said bond (it is for $30,000) was talked about: Gish said to Neff that they wished to see him about his notes in the bank, the bank examiner was finding fault; certain notes were mentioned, "that we did not regard these notes as safe and look upon them as single name papers, and that he ought to take them out of the bank or provide us with satisfactory security, and that we wanted him to make some effort to take up these notes, and that we wanted to feel safe in the matter. Mr. Neff said, 'I will do what I can in that matter to take out notes as fast as I can reduce,' he said, ' I don't see why you don't feel safe, I gave you a judgment that secures all these notes.' I said, ' Mr. Neff, that judgment is not on record,' ' well,' he says, ' you might put it on record any time you want if you find it necessary to protect yourself, but' he says, ' I would not like to have the judgment on record as it would in-

jure my credit and standing. If you feel any danger you may put it on record, but I would not like it; I think I can take these notes up, and I think I am good for all my debts.' That was principally what was said between us." Mr. Kern was present and heard what was said. At that time the bank held Neff's paper for about $20,000.

Mr. Gish testifies concerning said meeting and conversation; "I stated the object to Mr. Neff of the meeting about the amount of his notes, saying that we wanted security, some collateral, or to get him to take up some of these notes, and he said he didn't know why we were uneasy, because he had given judgment for all these notes, he always met me with the argument that he had given judgment for the notes . . . . ; he said, 'you fellows are safe, because I gave you judgment for all these notes.' . . . ." That afterwards when Neff was spoken to by the witness about his indebtedness, "he said he would take care of them, that we should renew them, that this judgment that we had was to cover all of these notes, and consequently the notes were renewed for his accommodation."

This is the testimony relied on by the bank. It was given upon the hearing on the reference back which was made to afford an opportunity to make the testimony more explicit after the witnesses had refreshed their recollections.

Kern was the indorser of Neff on notes held by the bank when said judgment was given and when said conference took place for about $6,200; after Neff's failure Kern lifted those notes. (Testimony of Mr. Gish and of Mr. Roper.) That liability or debt was part of the consideration of Kern's judgment which was confessed on April 6, 1896, for $10,950. The fund in controversy is $5,489.84.

The parties to a written contract may subsequently abandon, modify, or change it, or substitute a new contract, and this may be shown by parol: Holloway v. Frick, 149 Pa. 178.

In Mitchell v. Coombs, 96 Pa. 430, the latter had given a mortgage to a bank intended to secure, not future advancements but a bond of $1,000, which he at the time owed the bank and afterwards paid; the bank instead of satisfying the mortgage retained it as security for future discounts. The Supreme Court said that Coombs's acquiescence in that arrangement would no doubt estop him, but as to his judgment creditors the transaction was

of no legal force; as to them the mortgage was satisfied, and no arrangement not apparent on its face would avail to continue its lien; and quoted from Irwin v. Tabb, 17 S. & R. 423, that "It must perhaps be conceded that a mortgage to secure further advances which does not contain notice of the agreement is void against creditors generally." While Coombs was still indebted to the bank the latter assigned the mortgage to a third party, Coombs representing that it was a first lien and no defense against it. Concerning that, the Court said: "Suppose that this assignment, made as it was with Coombs's consent, not only estopped him, but as to creditors amounted to a novation of the mortgage. Yet as to them it could be nothing more than a novation, and in order to give it effect they must have notice."

A judgment for future advances is a lien for such advances as against intervening incumbrances only from the date of such future advances and not from the date of the judgment: Kerr's App., 92 Pa. 236.

Evidence of the intention of the parties at the time of the discounts to consider the new notes as renewals of former notes is not admissible; the question is one of fact, whether or not they are renewals, and not what the parties intended or considered: Appeal of Bank of Commerce, supra. The Court remarked that the rejected questions on the trial and the points were attempts to substitute the opinions and intentions of the parties for the actual facts, and that the court below was right in overruling the questions and in declining so to charge the jury.

The most obvious of the reasons why the bank's contention cannot prevail is the one that, taking said testimony at its strongest, it does not establish that the condition of the obligation was changed, nor that it was intended or desired to change it; nothing was added to it. The parties to the conference did not have the bond then, and it is probable that no one of them had a distinct idea as to what the bond actually covered. What Neff said on that occasion amounted to no more than an opinion that the bond covered the notes then held by the bank, or an argument, the purpose of which was to persuade the bank's representatives to be content with his obligation then held by the bank. He said, "I gave you a judgment that secures all these notes," and according to another version "that this judgment that we had was to cover all these notes."

It is urged that Kern is estopped from resisting the bank's claim because he was present and was a party to said conference. But he did not say, or refrain from saying anything that induced action, or inaction by the bank to its prejudice. And the cashier and the other director present knew as well as Kern that the latter was on Neff's paper then held by the bank. It seems Kern, like his colleagues, was satisfied with Neff's assurance that the bond was for all the notes on which he was liable to the bank. When that bond was entered and became a judgment it secured none of Neff's obligations at that time.

October 25, 1897, the exceptions are dismissed and the report confirmed.

*Errors assigned* were in dismissing exceptions to auditor's report.

*John Rupp*, with him *D. D. Roper*, for appellant.—The judgment of the appellant under its very terms was given, not only to secure liabilities of Neff to the bank, the appellant, existing at the time of the execution of the judgment bond, but also all future liabilities incurred by him: Appeal of Bank of Commerce, 44 Pa. 423.

The parties to a written contract may subsequently abandon, modify or change it, or substitute a new contract, and this may be shown by parol, by showing either an express agreement or actions necessarily involving the alteration: Holloway v. Frick, 149 Pa. 178 ; Mitchell v. Coombs, 96 Pa. 430; Peirce v. Black, 105 Pa. 342.

A judgment confessed in favor of a firm to secure future advances may, on the withdrawal of one of its members by agreement of the parties, remain a valid security in the hands of the remaining partners: Shenk's App., 33 Pa. 371.

*Edward Harvey*, for appellee.—A contract is to be construed by the words in which it is written: White v. Smith, 33 Pa. 186 ; Edelman v. Yeakel, 27 Pa. 26 ; Snyder v. Leibengood, 4 Pa. 305 ; Appeal of Bank of Commerce, 44 Pa. 423.

Where a mortgage was given to secure an existing indebtedness from the mortgagor to the mortgagee, which indebtedness was for the acceptance of notes and drafts by the mortgagee for

the accommodation of the mortgagor, it was held that such mortgage could not be stretched so as to be made a security to the mortgagee and his partner for liabilities of the mortgagor and his partner: Keesey v. Noedel, 2 York, 165. In Ayers v. Wattson, 57 Pa. 360, it was held that the mortgage, having been given to secure certain notes, became inoperative as a lien or security on their payment. And in the Appeal of the National Bank of Mt. Pleasant, 82 Pa. 488, it was held that the bond having been given as an indemnity for certain notes or a single renewal of them, does not cover subsequent renewals.

The finding of an auditor upon a question of fact being sustained by the court below, the Supreme Court will not review, because the finding might have been the other way, if the evidence was sufficient to sustain the finding: Lewis's App., 127 Pa. 127; Hess's Est., 150 Pa. 350; Burrough's App., 26 Pa. 264; Prouty v. Prouty, 155 Pa. 112; Donaldson's Est., 158 Pa. 292; Boffenmyer's Est., 150 Pa. 540; Penn Bank's Est., 152 Pa. 65.

PER CURIAM, March 21, 1898:

In his opinion dismissing the exceptions and confirming the auditor's reports the learned president of the common pleas has so carefully considered and satisfactorily disposed of the questions presented by the assignments of error that nothing can be profitably added to what he has so well said. A careful examination of the record has disclosed nothing that would justify us in disturbing the decree; and we accordingly affirm the same and dismiss the appeal for reasons given in the opinion referred to.

Decree affirmed and appeal dismissed at appellant's costs.