# The Land Title & Trust Co. *v.* Shoemaker.

*Mortgages — Mortgagees — Future advances and liabilities — Consideration—Rights of junior mortgagee—Priority.*

1. When a contract for advances or for the assumption of future obligations accompanies a mortgage it is not essential to its validity that the engagement governing the advances be placed upon record or, even expressely referred to in the mortgage. When such a contract obligates the mortgagee either to make advances or assume future responsibilities on behalf of the mortgagor, this lends a sufficient consideration to the mortgage and the lien of payments made under such an agreement relates back to the date of the mortgage, and this is true even though the advances are liquidations of assumed responsibilities incurred after the date of a subsequent or junior encumbrance placed upon the mortgaged premises.

2. The owner of real estate mortgaged the property to a trust company for $40,000. At the time of the execution of the mortgage but $32,000 had been loaned to the mortgagor by the mortgagee; at that time the mortgagor gave the mortgagee a demand note wherein it was agreed that "the securities hereby pledged together with any that may be pledged hereafter shall be applicable in like manner to secure the payment of any future obligations of the undersigned held by the holders of this obligation, and all such securities in their hands shall stand as one general continuing collateral security for the whole of said obligation." Thereafter the mortgagor gave the trust company a bond to indemnify it against loss which it might sustain by issuing a title policy in favor of the mortgagee of certain other property owned by the mortgagor. Thereafter the mortgagor gave a second mortgage upon the property covered by the $40,000 mortgage. The second mortgagee had notice that only $32,000 was loaned on the first mortgage. The mortgagor became indebted to the trust company for a large amount under the provisions of his bond. The mortgage was subsequently foreclosed and the property sold. The trust company and the second mortgagee each claimed the amount remaining after the payment of the $32,000. *Held,* that under the agreement between the mortgagor and the trust company a potential obligation such as that created by the bond of indemnity related back to the time of the execution of the mortgage, when it became a fixed liability; and that the trust company was entitled to payment of the full amount of the $40,000 mortgage in preference to the second mortgagee.

*Practice, Supreme Court—Appeals — Assignments of error—Defective assignments.*

3. Assignments of error complaining of the action of the lower court in dismissing exceptions to findings or conclusions of an auditor are defective where they do not contain in totidem verbis the court's action on the particular exception and where they do not show where the matter referred to is to be found in the paper books or the appendix.

Argued Jan. 23, 1917.  Appeal, No. 323, Jan. T., 1916, by Emma C. Bergdoll, from order of C. P. No. 1, Philadelphia Co., Sept. T., 1914, No. 217, dismissing exceptions to report of auditor, in case of The Land Title and Trust Company v. Samuel Shoemaker.  Before BROWN, C. J., POTTER, MOSCHZISKER, FRAZER and WALLING, JJ.  Affirmed.

Scire facias sur mortgage.

Exceptions to report of auditor distributing fund realized from the proceeds of a sheriff's sale. ,

The opinion of the Supreme Court states the facts.

The court dismissed the exceptions.  Emma C. Bergdoll appealed.

*Errors assigned* were in dismissing the exceptions.

*Nicholas H. Larzelere,* with him *R. Stuart Smith,* for appellant.—Until default, the bond to The Land Title & Trust Company and the counter indemnity bond constituted merely potential liabilities; no notice thereof appears on the face of the mortgage and they are not protected by it: Garber v. Henry, 6 Watts 57; Irwin v. Tabb, 17 S. & R. 419; Ter-Hoven v. Kerns, 2 Pa. 96; Parmentier v. Gillespie, 9 Pa. 86; Moroney's App., 24 Pa. 372; Bank of Montgomery County's App., 36 Pa. 170; McClure v. Roman, 52 Pa. 458; Taylor v. Cornelius et al., 60 Pa. 187; Kerr's App., 92 Pa. 236; Farabee v. McKerrihan, 172 Pa. 234; Dahlem's Est., 175 Pa. 444.

*Edward Brooks, Jr.,* with him *Frederick J. Geiger,* for appellee.—Where there is an obligation to make advances such advances will take precedence as of the date of the mortgage, even though made subsequent to the creation of other liens: Lyle v. Ducomb, 5 Binn. 585; Ter-Hoven v. Kerns, 2 Pa. 96; Parmentier v. Gillespie, 9 Pa. 86; Moroney's App., 24 Pa. 372; Dahlem's Est., 175 Pa. 444.

OPINION BY MR. JUSTICE MOSCHZISKER, March 19, 1917:

This case involves the distribution of a fund raised at sheriff's sale upon the foreclosure of a mortgage; the matter was referred to an auditor, whose report was confirmed by the court below; Emma C. Bergdoll has appealed from the decree of confirmation.

Samuel Shoemaker owned a property at Fifty-second street and Wynnefield avenue, Philadelphia, which, on September 9, 1909, he mortgaged to the Land Title and Trust Company for $40,000; the mortgage was forthwith recorded; subsequently, in 1914, foreclosure proceedings were instituted thereon and a judgment entered against the mortgagor for $43,946.67; thereafter, on February 2, 1915, the property was sold at sheriff's sale realizing $46,600; at settlement, after paying taxes and charges, $35,560 of this amount was handed to the mortgagee, and the balance, $9,305.57, was paid into court for distribution, being the fund in controversy.

The $40,000 mortgage was intended as collateral, and, when executed, the trust company loaned only $32,000 to Mr. Shoemaker; at that time the latter gave the mortgagee his demand note containing the following provision: "It is further agreed that the securities hereby pledged, together with any that may be pledged hereafter, shall be applicable in like manner to secure the payment of any......future obligations of the undersigned held by the holders of this obligation, and all such securities in their hands shall stand as one general con-

tinuing collateral security for the whole of said obligations."

August 5, 1912, Mr. Shoemaker gave to the trust company a bond for $150,000, reciting that, whereas the obligee had agreed to insure the erection and completion, free of liens, of a certain building on Wayne avenue, Philadelphia, in favor of the holders of a mortgage thereon, the obligor agreed to indemnify the obligee "of and from all loss, damage, costs, charges, liability or expense" caused by this undertaking; thereupon, the trust company issued its policy of insurance in the sum of $150,000 to Eli K. Price et al., executors, in connection with a mortgage of like amount executed by Samuel Shoemaker et al.; the building was not completed by Shoemaker, and mechanics' liens were filed against it; suit was brought upon the $150,000 mortgage, and judgment recovered; the property was sold under execution on this judgment, but the sum realized was $6,892.62 short of the amount required to pay the holders of the mortgage their debt, interest and costs; this deficiency was paid by the trust company under its title policy, on account of the loss sustained by the mortgagees through the noncompletion of the building; in addition, the company was obliged to deposit with a referee $16,000 to meet certain mechanics' liens filed against the premises, should such liens be sustained at law in a proceeding pending to test their validity.

May 28, 1913, Samuel Shoemaker gave Emma C. Bergdoll, the appellant, his note for $18,000; this instrument recited that Mr. Shoemaker had on the same day executed and delivered to the holder thereof a bond and mortgage for a like amount, secured upon the property at Fifty-second street and Wynnefield avenue, being the same premises covered by the before-mentioned $40,000 mortgage; the note contained also a clause to the effect that it was to secure past and future obligations; the $18,000 bond and mortgage was duly recorded as a second lien upon the property in question, subject to the

$40,000 mortgage; at the date of the execution of the mortgage to Mrs. Bergdoll, and at the time she made her claim against the fund in controversy, Mr. Shoemaker owed her at least $18,000.

There were several claimants on the fund; but the contest we have to decide is between the trust company and Mrs. Bergdoll. The former contends that, on the facts as we have recited them, the $40,000 mortgage, in accordance with the agreement executed at the time of the original $32,000 loan, was executed and delivered not only as collateral for this first loan, but also to secure payment of any "future obligations" of Mr. Shoemaker which might thereafter be held by the mortgagee; that the $150,000 bond accepted from Mr. Shoemaker, in 1912, is such a "future obligation"; that therefore the trust company is entitled to recover out of the fund in court the amount which this latter obligation has and will cost it. On the other hand, Mrs. Bergdoll contends that, when she took her mortgage, in 1913, although the trust company then held the $150,000 bond executed by Mr. Shoemaker, and had issued its policy of title insurance in connection therewith, yet, at that date, its liability on such policy was merely potential; that the trust company never paid any actual losses thereunder until May, 1914, some months subsequent to the date of her mortgage; hence, that she has a prior lien and is entitled to the fund in court.

The learned auditor accepted the view of the trust company, and made his award accordingly. In so doing, he finds that the latter is entitled to the sum of $6,892.62, with interest from May 14, 1914, and to the balance of the fund, should the liens upon the property whose completion it insured be declared valid; but he adds that, if these liens are not sustained, then the distribution will have to be restated.

The questions we have to decide are narrow, but very nice. They may be reduced to these: (1) When the trust company, in 1912, accepted and became the holder of Mr.

Shoemaker's $150,000 bond, did it, by issuing the policy
of title insurance recited therein, to the holders of the
mortgage in that transaction, bind itself, in effect, to Mr.
Shoemaker and his then present mortgagees, to advance
to the latter, on the former's account, such sums of
money as might be necessary to indemnify the mort-
gagees against loss by reason of noncompletion of the
building covered by their mortgage? (2) If this was the
effect of the transaction just referred to, then should the
contract made in 1912, when the trust company accepted
the $150,000 bond and issued its title policy, be treated
as a supplement to the original agreement of 1909? (3)
If, as a matter of law, it should be so considered, then, as
against Mrs. Bergdoll's mortgage of 1913, should this
contract of 1912 be given the same effect as though its
terms originally had been expressly incorporated into
the agreement of 1909?

We think all the propositions just enumerated must
be answered in the affirmative. The bond accepted in
1912 was an obligation of Mr. Shoemaker, the original
mortgagor, which recited the title policy issued by the
trust company as part of the agreement then entered
into; hence, both of these instruments must be consid-
ered in deciding as to the nature of that agreement; and,
when so considered, it seems plain that the agreement in
question formed a binding contract on the part of the
trust company, if called upon so to do, to pay on Mr.
Shoemaker's behalf any losses which his default in
finishing the building described in the bond and title
policy might cause to the parties insured by the latter in-
strument; which, in effect, was a contract to make fu-
ture advances. For these advances Shoemaker was liable
to the trust company on the $150,000 obligation, to secure
which the latter held the $40,000 mortgage as collateral.
We make this last statement, as the agreement of 1909
was that the mortgage in question should stand as col-
lateral not only for Shoemaker's $32,000 obligation, but
also for any future obligations of the debtor which might

come into the mortgagee's hands.   This contract
was in full life when the trust company accepted the
$150,000 bond, which instrument fell squarely within
the definition of a "future obligation"; and, at the time
of the acceptance thereof, the company agreed in connec-
tion therewith to make the advances already referred to.
Under these circumstances, there is no reason apparent
why, after 1912, this agreement should not be considered
just as effective between the parties thereto, and all
others dealing with the property covered by the $40,000
mortgage, as the original contract executed in 1909 when
the mortgage was first taken as collateral.   Had the
terms of the 1912 agreement been originally incorporated
into the contract of 1909, there can be no question as to
their effect, for it is now established in Pennsylvania
that, when a contract for advances or the assumption of
future obligations accompanies a mortgage, it is not es-
sential to its validity that the engagement governing the
advance be placed upon record, or even expressly referred
to in the mortgage (Moroney's App., infra); it is also
established that, when such a contract obligates the
mortgagee either to make advances or assume future re-
sponsibilities on behalf of the mortgagor, this lends a
sufficient consideration to the mortgage, and the lien
of payments made under such an agreement relates back
to the date of the mortgage; furthermore, this is true
even though the advances or liquidation of assumed re-
sponsibilities occur after the date of a subsequent, or
junior, encumbrance placed upon the mortgaged prem-
ises : see authorities, infra.

If, under an arrangement such as we have before us,
we should be obliged to hold, as contended by the appel-
lant, that the $40,000 mortgage would have no lien to
protect the trust company's present claim until the date
of the actual payments made by the latter on its title
policy, it would be practically impossible for such cor-
porations, when issuing policies like the one at bar, ade-
quately to protect themselves against loss by the accept-

ance of mortgages upon real estate as collateral; which would be an unfortunate state of affairs for both real estate investors and trust companies. We are convinced, however, that neither the facts of this case nor the applicable principles of law call for or necessitate such a ruling. When Mrs. Bergdoll negotiated with Mr. Shoemaker in 1913, she knew there was at that time a first mortgage of $40,000 upon the property offered as security; she also had actual notice that the loan made at the date of this mortgage was only $32,000—all of which was sufficient to put her on inquiry as to the exact status of the $40,000 encumbrance to which she in express terms made her $18,000 mortgage subject. Had she exercised ordinary care in this respect, she would have ascertained that, in addition to the $32,000 actually paid out when the $40,000 mortgage was created, the trust company, under a binding supplemental agreement, entered into when accepting from the mortgagor a "future obligation," had agreed to make advances on his behalf, if called upon so to do, to an amount more than sufficient to cover the remaining $8,000. Under the circumstances, the auditor did not err in holding that, as between Mrs. Bergdoll and the trust company, the former's encumbrance was subject in all respects to the $40,000 mortgage held by the latter; and, hence, that the trust company had a first lien on the fund for distribution.

For discussion of the general principles involved in the present case, reference is made to the following authorities, most of which were cited to us by both sides: Lyle v. Ducomb, 5 Binney 585; Stewart v. Stocker, 1 Watts 135, 140; Garber v. Henry, 6 Watts 57; Irwin v. Tabb, 17 S. & R. 418; Ter-Hoven v. Kerns, 2 Pa. 96 (in connection with last three cases, see Moroney's App., infra) ; Parmentier v. Gillespie, 9 Pa. 86; Moroney's App., 24 Pa. 372; Bank of Montgomery County's App., 36 Pa. 170; Bank of Commerce App., 44 Pa. 423; McClure v. Roman, 52 Pa. 458; Parker v. Jacoby, 3 Grant 300; Taylor v. Cornelius et al., 60 Pa. 187, 196; Kerr's

App., 92 Pa. 236; Mitchell v. Coombs et al., 96 Pa. 430; Farabee v. McKerrihan, 172 Pa. 234, 242; Neff's Est., 185 Pa. 98; Dahlem's Est., 175 Pa. 444, 453; Mullison's' Est., 68 Pa. 212, 215. A study of our decisions in the above cases will show a general accord with the conclusions here reached; and, while there may appear some conflict in certain statements to be found in the various opinions touching the general subject now before us, yet, when the development of the law is taken into account, it will be seen that these differences are not material.

We have not felt called upon to pass separately on the several specifications of error, for all of them are defective in form; in each instance they assert the court below erred in dismissing a certain exception to a designated finding or conclusion of the auditor, but in no instance do they contain—in totidem verbis—the court's action on the particular exception, nor do they show where the matter referred to is to be found in the paper books or the appendix: see Prenatt v. Messenger Printing Co., 241 Pa. 267, 269-70; Markleton Hotel Co. v. Connellsville & State Line Railway Co., 242 Pa. 569, 572-3; Pfaff v. Bacon, 249 Pa. 297, 300. A proper form for such assignments will be found in the first of these cases.

The decree is affirmed.