**In re PARKER MONTANA COMPANY,
a Montana corporation, Debtor.**

**FIRST BANK BILLINGS and United
States Small Business Administration,
Plaintiffs and Appellees,**

v.

**FETERL MFG. CO. and Parker Montana and Charles Hingle, Trustee,
Defendants and Appellants.**

**No. MC–CV–83–92–BLG.**

United States District Court,
D. Montana,
Billings Division.

Feb. 20, 1985.

Rodd Hamman, Billings, Mont., for Feterl Mfg. Co., defendant and appellant.

Charles Hingle, Billings, Mont., Trustee.

Gerald Murphy, Billings, Mont., for First Bank Billings and Small Business Admin.

## MEMORANDUM AND ORDER

HATFIELD, District Judge.

Appellants seek review of the decision of the Bankruptcy Judge that Feterl Manufacturing Company ("Feterl") does not have standing to raise the issue of equitable subordination under 11 U.S.C. § 510. This court is requested to find that Feterl has standing to raise the issue and to remand the case to Bankruptcy Court for further consideration. Jurisdiction vests in this court pursuant to 28 U.S.C. § 1334.

This case originally was tried in the United States Bankruptcy Court, Billings Division, on September 15, 1983. First Bank-Billings (hereinafter "First Bank") and the United States Small Business Administration (hereinafter "SBA") filed a motion to modify the automatic stay to sell certain collateral and apply sale proceeds against debtor's debt. It is conceded by all parties that the First Bank was a secured party within the meaning of the Uniform Commercial Code (hereinafter "UCC"). Feterl responded by averring that it possessed a Purchase Money Security Interest (hereinafter "PMSI") and therefore, under the Uniform Commercial Code, had superior interest in the collateral to that of First Bank. Section 30–9–312, Montana Code Annotated (1979) (hereinafter "MCA"). Based on this averment, Feterl urged the Bankruptcy Court to apply the common law doctrine of, *inter alia,* "equitable subordination" under 11 U.S.C. § 510.

The Bankruptcy Judge found that Feterl had failed to show that it had met the UCC "notice" requirements for a PMSI, under § 30–9–312(3) MCA (1979), and that Feterl has no standing to seek application of equitable subordination under 11 U.S.C. § 510.

## I. STANDARD OF REVIEW

■ The standard of review of a bankruptcy court's decision by a federal district court is whether the bankruptcy judge's decision was "clearly erroneous". Bankruptcy Rule 8013.[1] It is clear from a plain reading of the language of Rule 8013 that, contrary to Appellant Feterl's statement of the law,[2] that this court must, indeed, give deference to the findings of fact made by the bankruptcy judge. *See also, Mayview Corporation v. Rodstein,* 620 F.2d 1347 (9th Cir.1980); *United States v. U.S. Gypsum Company,* 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

## II. FACTS

Debtor Parker Montana Company (hereinafter "Parker") was engaged in business as an agricultural supply company located in Billings, Montana. It was financed by several different entities, largest among whom were Plaintiffs/Appellees First Bank and the SBA. The First Bank and the SBA had perfected security interests in all Parker's inventory, accounts, contract rights, and all proceeds thereof, against which money was periodically loaned. Parker was also financed by a number of agricultural equipment manufacturers, whose equipment it sold. Defendant/Appellant Feterl Manufacturing Company (hereinafter "Feterl") was one of those manufacturers. Feterl alleges that it has a perfect-

---

**1.** Rule 8013, USCS Bankruptcy Rule, provides that a district court "may affirm, modify, or reverse a bankruptcy court's judgment, order, decree, or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."

**2.** Appellant's Brief, filed December 29, 1985.

ed PMSI in accordance with § 30–9–312, MCA (1979), which is superior to the security interests of First Bank and the SBA. The equipment to which Feterl claims its security interest attaches is augers and other miscellaneous inventory (hereinafter "Feterl inventory") on which Parker owes $50,015.88. It is the Feterl inventory which is the subject of this dispute.

On March 4, 1983, as part of a pre-arranged reorganization plan between Parker and First Bank, Parker surrendered its assets to First Bank. Thereafter all Parker assets, including the Feterl inventory, were sold by First Bank at auction for $1,000,-000.00. Feterl asserts that the discussions between First Bank and Russell Clark, Parker's president, which preceded the development of Parker's reorganization plan and ultimately resulted in the sale of, among other things, the Feterl inventory, actually amounted to an inequitable collusive scheme between First Bank and Parker to deprive all creditors but First Bank, the SBA, and Borg Warner Acceptance Corporation (hereinafter "BWAC") of repayment on debts owned by Parker.

Feterl, based on this assertion of inequitable conduct, urged the Bankruptcy Court below to equitably subordinate First Bank's claim to Feterl's claim under 11 U.S.C. § 510(c).[3] The Bankruptcy Judge ruled, based on his conclusion that Feterl had not complied with the statutory requirements for perfection of a PMSI, that Feterl does not have standing to seek equitable subordination. The Bankruptcy Judge further concluded that there was no evidence of fraud by First Bank. The sole issue of Feterl's standing to raise equitable subordination is now before this court.

## III. STANDING

### A. *Generally*

■ Section 510(c)(1) was intended to be applied in accordance with existing cases,

and to be developed by the courts. 11 U.S.C.A. § 510(c)(1), Congressional Record. A claim is generally subordinated to another claim which would otherwise be superior, only if the holder of the claim to be subordinated has committed inequitable conduct or if the claim itself is such that it would ordinarily be susceptible to subordination.[4]

■ It is usually held that a general creditor does not have standing to seek equitable subordination, where the trustee in bankruptcy has instituted a claim for such relief. *In re Ludwig Honold Manufacturing Company,* 30 B.R. 790 (E.D.Pa. 1983). Courts have further refused to place the claims of one unsecured creditor above those of another, based on the Supreme Court holding that it is not permissible to set up a subclass of claims within a class which the Bankruptcy Act gives equal status. *Matter of David A. Rosow,* 13 B.R. 203 (D.Conn.1981); *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). Since the trustee in bankruptcy is ostensibly the representative of the creditors, and not the debtor, he is the proper party to bring equitable subordination claims. *In Re Lockwood,* 14 B.R. 374 (E.D.N.Y.1981).

■ In the event, however, that a general creditor applied to the trustee to object to another creditor's claim, and the trustee refused to object, and the court authorizes the creditor to proceed, a general creditor may have standing to object. *In Re Meade Land and Development Co., Inc.,* 1 B.R. 279 (E.D.Pa.1979); *Fred Reuping Leather Company v. Fort Greene National Bank,* 102 F.2d 372 (3rd Cir.1939); *In Re Patterson-MacDonald Shipbuilding,* 288 Fed. 546 (9th Cir.1923).

■ The prohibition against challenges to claims of creditors by general creditors

---

**3.** 11 U.S.C. § 510(c) provides:
(c) after notice and a hearing, the court may
(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an

allowed interest to all or part of another allowed interest....

**4.** *i.e.,* a penalty or claim for damages resulting from the purchase or sale of a security of the debtor. 11 U.S.C.A. § 510(c)(1).

unless the trustee refuses to challenge them does not apply to secured creditors. *Henry Ansbacher and Company v. Klebanow*, 362 F.2d 569 (2nd Cir.1966). The interests of secured creditors have been distinguished from those of general creditors because security interests are at stake for secured creditors. *Id.* Therefore, secured creditors are generally permitted to contest the claims of general creditors without resort to the trustee. *In the Matter of Ira Haupt and Company*, 253 F.Supp. 97 (S.D.N.Y.1966).

#### B.  *The PMSI as a Security Interest*

■ A security interest is a PMSI when it is

(i) taken or retained by the seller of the collateral to secure all or part of its price;  or (ii) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

MCA § 30-9-107(a, b) (1983). A PMSI has priority over a conflicting security interest in the same collateral and identifiable cash proceeds received on or before delivery if it is perfected at the time the debtor receives the inventory and the purchase money secured party meets the written notice requirements of § 30-9-312(3). The statute provides expressly that written notice must be given by the holder of a PMSI to holders of conflicting security interests for which a financing statement was filed before the date of filing of the PMSI. § 30-9-312(3)(b), MCA. However, one case from a federal bankruptcy panel in the District of Montana has held that oral notice is sufficient where evidence is such that the holder of the prior security interest had knowledge of another holder's intent to finance. *In Re Tri-Mont Equipment, Inc.*, 40 St. Rptr. 2095 (1983). In *Tri-Mont*, the panel employed a "totality of the circumstances" test to determine that the holder of the prior security interest was on notice. *Id.* Based on the definitional section of the UCC, "notice" is actual knowledge, receipt of notice, a totality of the circumstances

which indicate that a party had reason to know or when a fact comes to a party's attention. §§ 30-1-201(25) and (26), MCA. The panel in *Tri-Mont* read the foregoing sections together with the notice requirement of § 30-9-312(3) and concluded that oral notice is sufficient. *Tri-Mont, supra.* In *Tri-Mont*, however, the facts were clear that the prior secured party at least had oral notice.

### IV.  DOES FETERL HAVE STANDING TO OBJECT?

#### A.  *Is Feterl a Secured or a General Creditor?*

On October 7, 1980, First Bank filed a financing statement in "all Parker inventory, accounts receivable and contract rights now owned or hereafter acquired."  On February 8, 1982, Feterl filed a financing statement with the Secretary of State for Montana in "all accounts receivable and contracts of the debtor now existing or hereafter arising, all inventory and equipment made or furnished by [Feterl] now owned or hereafter acquired by the debtor...."  I conclude that the Bankruptcy Judge's conclusion that the First Bank had properly perfected its security interest prior to the perfection of Feterl's security interest is supported by the evidence. In order for Feterl's security interest to be a PMSI and therefore prior to First Bank's, the Bankruptcy Court must have found that:

(a) the PMSI was perfected at the time Parker received possession of the inventory;  and

(b) Feterl gave notification in writing to the Bank:

(i) before the date of Feterl's filing;  or

(ii) before the beginning of the 21-day period if the PMSI is temporarily perfected without possession IAW § 30-9-304(5), MCA;  and

(c) the Bank received notice within 5 years before Parker received possession of the inventory;  and

(d) the notification stated that Feterl had or expected to acquire a PMSI in Parker

inventory, and said notification described the inventory by item or type. § 30–9–312(3), MCA.

An examination of the Bankruptcy Judge's decision, together with the record in this case, leads this court to conclude that the Feterl inventory was received after perfection of its security interest. There is no basis for this court to find that the bankruptcy court was "clearly erroneous" in its determination that Feterl had not met the notification requirements of § 30–9–312(3)(b), MCA. In fact, according to the testimony of one of Feterl's own officers, Mr. Ron Feterl, Feterl has no record or any other evidence of providing such notice. Even if this court were to decide that oral notice was sufficient to meet UCC requirements, there is no indication in the record that any kind of notice, oral or otherwise, was received by First Bank until February 25, 1983. In light of the above, I find that the Bankruptcy Court's conclusion that Feterl did not have a PMSI is supported by the evidence of record.

The Bankruptcy Court's opinion does not reveal that the question of whether Feterl is a secured creditor was considered, apart from the specific issue of whether Feterl had a purchase money security interest. Therefore, this court draws no conclusions as to that issue or any standing to object which may derive therefrom.

## V. ORDER

For the reasons set forth herein, IT IS HEREBY ORDERED that the decision of the Bankruptcy Court be AFFIRMED in accordance with the above memorandum.