**In re Thomas J. MORRISON and Elaine H. Morrison, Individually, Jointly, and as Tenants by the Entireties, Debtors.**

**Bankruptcy No. 84–01900K.**

United States Bankruptcy Court, E.D. Pennsylvania.

Jan. 29, 1987.

Mark C. CLemm, Norristown, Pa., for W. Boulton Alexander.

Harris Goldich, King of Prussia, Pa., for Estate of Marjorie K. Hoffman.

Lawrence J. Tabas, Philadelphia, Pa., for trustee.

Steven D. Usdin, Philadelphia, Pa., for debtors.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The rather simple facts of this case bring before us, first, a difficult procedural issue relating to the standing of a general unsecured creditor to object to the secured status of a secured creditor; and, assuming that we reach it, a difficult substantive issue regarding the validity of a portion of a mortgage which, while failing to disclose the potential of same on its face, was later extended to secure future advances given by the mortgagee to the Debtor-mortgagors. Our result is derived from our conclusion that the substantive claim of the objecting party has no merit as to the validity of the mortgage as a whole and doubtful merit as to the invalidity of any part of the mortgage. We conclude that the objecting creditor has the requisite standing to at least raise the issue of whether the Trustee abused his discretion in not pursuing the claims in issue. However, since we conclude that the Trustee's exercise of discretion to refuse to pursue the objection in issue was reasonable, we hold that the Objection must be dismissed and the matter put to rest.

The Debtors, husband and wife, filed this Chapter 7 bankruptcy proceeding on June 11, 1984. The factual record on which the instant Motion is considered consists of a one-page Stipulation of Facts between Counsel for W. Boulton Alexander (hereinafter "Alexander")[1] and the Estate of the late Marjorie Hoffman (hereinafter "Hoffman"),[2] which included Alexander's Objection to Hoffman's claim, the matter before us, and Hoffman's Answer thereto; the respective Proofs of Claim and supporting documents filed by both Alexander and Hoffman; and the County records of the title and liens upon the Debtors' premises.[3]

These documents establish that, on October 8, 1982, the Debtors executed a Mortgage and Security Agreement in the amount of $100,000.00 on their residence in favor of Hoffman, at an interest rate stated therein to be disclosed in a Note of same date. The Note "acknowledges" a pledge of stock valued at $80,000.00 and a $20,000.00 balance of a previous loan from Hoffman to the Debtors, with interest payable at six and one half (6½%) percent per annum.

Neither the mortgage nor the Note makes any reference to the possibility that the mortgage may secure any future advances. However, on May 16, 1983; December 13, 1983; and April 12, 1984, the Debtors "acknowledged" further advances of $44,000.00; $2,400.00; and $14,000.00, respectively, to them from Hoffman, and each Note states that the mortgage of October 8, 1982, is security therefor. The mortgage of October 8, 1982, was, moreover, not recorded until February 21, 1984.

Meanwhile, on May 19, 1981, the Debtor executed two (2) Notes in favor of Alexander in the amount of $50,000.00 and $10,000.00, respectively. On March 15, 1984, Alexander entered confessed judgments in a total amount of $75,500.00 against the Debtors on these notes in state court.

On June 19, 1984, shortly after the filing, James P. Wade accepted an appointment as the interim Trustee in the bankruptcy case. The Trustee, by his counsel, proceeded to file, on September 12, 1984, a Motion to

---

1. Alexander is the party referred to as the "general unsecured creditor" in the first paragraph of this Opinion.

2. Hoffman is the party referred to as the "secured creditor" in the first paragraph of this Opinion.

3. Since the record was established by Stipulation, we need make no factual findings, and we therefore present our Opinion in narrative form, rather than presenting it in the form of Findings of Fact, Conclusions of Law, and Discussion, as would otherwise be required by Bankruptcy Rule 9014 and Federal Rule of Civil Procedure 52(a).

avoid Alexander's judicial lien on the Debtors' residential realty and a Complaint to avoid a preferential transfer of the Debtors to Alexander, at Adversarial Case No. 84–1204. Alexander filed a Motion for relief from the Automatic Stay on July 11, 1984, and, on June 19, 1985, filed, in addition, the instant Objection to Hoffman's claim, which seeks to have the claim disallowed in its entirety. Hoffman, by her counsel, responded with defenses which include a contention that Alexander lacked standing to raise this Objection.

On September 3, 1986, all four (4) of these outstanding matters came before the Court. Alexander, in his Brief, attributes the delay between the filing date and this listing to the Trustee's lengthy process of investigation of the Hoffman claim.[4] After negotiation among themselves outside the courtroom on that date, counsel representing Hoffman, Alexander, the Trustee, and the Debtors announced to the court that all of the matters had been resolved by agreement except the instant Objection. This agreement embraced the ˙withdrawal of both Alexander's request for relief from the automatic stay and the Trustee's adversarial Complaint against Alexander, and the acquiescence of Alexander in the avoidance of his judicial lien.[5] In an Order of September 18, 1986, upon receipt of the brief Stipulation of Facts referenced *supra,* we directed that Briefs of the parties be submitted by Alexander and Hoffman, respectively, on or before October 17, 1986, and November 14, 1986.

Upon reviewing the pertinent law upon receipt of the Briefs, we observed that a substantial issue as to whether Alexander had standing to assert the Objection in issue existed. We thereupon issued an Order of November 17, 1986, citing the parties to *Fred Reuping Leather Co. v. Fort Greene Nat'l Bank,* 102 F.2d 372 (3d Cir. 1939); *In re Ludwig Honold Mfg. Co.,* 30 B.R. 790 (Bankr.E.D.Pa.1983) (per KING, J.); and 3 COLLIER ON BANKRUPTCY, ¶ 502.01, at 502–13 to 502–14 (15th ed. 1986), all of which suggested that Alexander may lack the requisite standing to pursue his claim, and we requested all of the interested parties to brief the standing issue by November 26, 1986. Ultimately, Alexander requested an extension until December 8, 1986, to file his supplemental Brief on this issue, and we accorded same with the proviso that any of the other parties could have until December 12, 1986, to reply.

Alexander, in his supplemental Brief, cites no authorities in support of his claim that he in fact has standing,[6] contends that the Trustee "has defaulted in his duty to press" the Objections set forth by Alexander; and asserts that "judicial economy

---

4. However, in this Brief, Alexander erroneously claims that he filed his *Objection* on July 11, 1984, and that the delay of the Trustee stretched over two and a half years. The record indicates, however, that Alexander has confused the filing date of his Motion for relief from the stay with the filing date of the Objection.

5. Because Alexander received considerable benefit from the Trustee's withdrawal of his preference claim in this settlement, the Court rejects Alexander's argument that he agreed to these terms only because of an implicit understanding that the Trustee authorized him to pursue his claims against Hoffman on their merits in the Trustee's stead. In any event, no such agreement was ever related to the Court.

6. In fact, Alexander's counsel engages in the irritating practice of quoting piecemeal from Collier and the Advisory Committee Note to Bankruptcy Rule 3007, in just such a manner as to make these sources appear to support his position when, if read in their entirety, they do not appear to do so. The Collier quote is ended just short of the following excerpt:

Yet the needs of orderly and expeditious administration do not permit the full and unfettered exercise of such right [of creditors to object to the allowance of another creditor's claim]. *The most important qualification attached to the right of a creditor to object is that it is the trustee who acts as the spokesman for all the creditors in discharge of the trustee's duty unless the trustee refuses to take action.* 3 COLLIER, *supra,* ¶ 502.01, at 502–13 (footnotes omitted) (emphasis added).

The quote from the Advisory Committee Note omits the following quote which appears immediately after the portion excerpted:

But under § 704 *the trustee,* if any purpose would be served thereby, *has the duty to examine proofs of claim and object to improper claims.* (emphasis added).

and efficient and cost effective administration" would be furthered by allowing Alexander to assert his Objection instead of "requiring a technical, procedural process" whereby Alexander would be forced to compel the Trustee to act.

The Debtors, in a letter-brief, accuse Alexander's counsel of attempting "to usurp the power and authority of the Trustee throughout the course of this bankruptcy case." The Trustee, in his Brief, indicates that, after investigating the Hoffman claim, he decided not to object to same, pointing out that he has sought to avoid a repayment made by the Debtors to Hoffman as a preferential transfer, as well as pursuing other preference-avoidance litigation,[7] but further stating that he has "no objection to Alexander's petitioning the court for leave to proceed."

■ Despite the considerable apparently-contrary authority, we are unwilling to deny Alexander's Objection on the basis of lack of standing to question the Trustee's decision not to pursue the Objection in issue. Unless the Code is clear in stating otherwise, we believe it just to accord any party expending the time and financial resources to raise a claim the opportunity for a disposition on a less technical basis. Very significant to our reasoning process in this regard is the recent decision of the Third Circuit Court of Appeals in *In re McKeesport Steel Castings Co.*, 799 F.2d 91 (3d Cir.1986), which, while not cited by Alexander, convinces us that interested creditors can act "in lieu of the trustee" when the trustee refuses to act or has no reason to act. *See id.* at 94, 93. Consistent with the *McKeesport* result, we are

very reluctant to allow standing to become a means to avoid deciding difficult substantive issues put before us.

■ We do acknowledge the principle enunciated by the Court of Appeals in *Fred Reuping*, 102 F.2d at 372–73, that "a general creditor of a bankrupt has no right to contest another creditor's claim ... unless upon application the trustee has refused to do so and that ... court has authorized the creditor to proceed in the trustee's name." We also acknowledge that this holding has been uniformly adopted in all Code cases of which we are aware, including *In re Savidge*, 57 B.R. 389, 392 (D.Del.1986); *In re Werth*, 54 B.R. 619, 622 (D.Colo.1985); *In re Parker Montana Co.*, 47 B.R. 419, 421 (D.Mont.1985); and *Ludwig Honold, supra*, 30 B.R. at 791–02. *Cf. In re Meade Land and Development Co., Inc.*, 1 B.R. 279, 282 (Bankr.E.D.Pa.1979) (per KING, J.) (Act case).[8] Although, as we indicate below, the teaching of these cases causes us to require that the objecting creditor establish that the Trustee has abused his discretion before permitting the creditor to proceed, the *McKeesport* decision appears to us to establish that we cannot justify basing our decision on the principle of standing.[9]

We must note, however, that Alexander is doing more than merely objecting to the claim of another creditor, which is a difficult enough proposition for an unsecured creditor to sustain in itself. Rather, he is, in effect, seeking to exercise the Trustee's "strong arm" avoidance power, per 11 U.S.C. § 544, as to Hoffman's Claim.

---

**7.** We note that, on our Motion list of December 23, 1986, there appeared seven (7) preference-avoidance actions instituted by the Trustee against various creditors, including the proceeding (Adversarial No. 86–1326K) to avoid a $2,249.00 interest payment made to Hoffman by the Debtors as a preferential transfer.

**8.** The Act, at 11 U.S.C. § 93(d), like the Code, provided that Objections to claims could be made by any "parties in interest." Thus *Fred Reuping* would appear to remain a persuasive authority.

**9.** We should observe that we reject Alexander's contention that we improperly raised the standing issue *sua sponte.* There are two (2) answers to this contention. First, since Hoffman raised the issue of standing in her Answer, if not in her Brief, we did *not* raise the issue *sua sponte.* Issues raised in pleadings are not waived by failure to discuss same in briefs. Secondly, it is clear that the issue of standing can and in fact should be raised *sua sponte,* where applicable. *See Frissell v. Rizzo*, 597 F.2d 840, 843–45 (3d Cir.), *cert. denied*, 444 U.S. 841, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979).

By reason of the avoidance of its judicial liens, Alexander is no more than a general, unsecured creditor of the Debtors. There is considerable question, given *Fred Reuping* and the other cases cited at page 588 *supra,* whether, despite the wording of 11 U.S.C. § 502(a), which appeare to give any "party in interest" a right to proceed to object to a claim, it could proceed here. However, although phrasing his Objection in terms of a request to disallow Hoffman's claim, what Alexander is attempting to accomplish is, in substance, an exercise of the Trustee's "strong arm" powers to avoid the Debtors' transfers of property interests, as enunciated in 11 U.S.C. § 544.

The Court reaches this conclusion because of its observation that Alexander is not contending *either* (1) that the Debtors do not owe the sums claimed by Hoffman; or (2) that the Debtors themselves have a defense to Hoffman's claim of a secured status. Indeed, no such claims could successfully be advanced on the basis of the record here. The Debtors, as parties to the mortgage and the Notes, could not successfully attack the validity of the mortgage solely due to defects in its recording, at least not unless they were proceeding, in the shoes of the Trustee, pursuant to 11 U.S.C. §§ 522(h), 522(g)(1), and 544. *See Scott v. Penn Title Ins. Co.,* 48 BERKS 239, 49 BERKS 36 (1957); *Hopkins v. Albee York Homes, Inc.,* 42 D. & C.2d 211 (York Co.C.P.1967). However, a party asserting the powers of the "strong arm" clause clearly *can* avoid the imposition of a purported security interest on the basis of recording defects. *See, e.g., In re Duffy-Irvine Assoc.,* 39 B.R. 525, 538 (Bankr.E.D. Pa.1984) (per KING, J.); *In re Marta Group.,* 33 B.R. 634, 639 (Bankr.E.D.Pa. 1983) (per GOLDHABER, CH. J.); and *In re Fisher,* 7 B.R. 490 (Bankr.W.D.Pa.1980).

Alexander is, moreover, not invoking the proper adversarial proceeding posture to attack the validity of Hoffman's security

interest. *See In re Jablonski,* 70 B.R. 381, 385 (Bankr.E.D.Pa.1987); *In re Palombo Farms of Colorado, Inc.,* 43 B.R. 709, 711 (Bankr.D.Colo.1984); and *In re Belco,* 38 B.R. 525, 528 (Bankr.W.D.Okla.1984). However, more importantly, except for the limited exception set forth in 11 U.S.C. §§ 522(h) and 522(g)(1), 11 U.S.C. § 544 states that only the *trustee* can invoke its powers. However, again on the basis of *McKeesport,* interpreting 11 U.S.C. § 506(c), which provides similarly to § 544 that it may be invoked only by the Trustee, we are unwilling to rule against Alexander on this basis alone.

■ Having said all of the foregoing, and having resolved a close procedural question of standing in his favor, we are nevertheless constrained to rule against Alexander on a different ground. We believe that the substantive claims of of Alexander, for the most part, clearly lack substantive merit. There is a considerable question as to whether *any* of his claims have merit. Therefore, we refuse to hold that Alexander has proven that the Trustee was abusing his discretion by failing to pursue the claims against Hoffman pursuant to 11 U.S.C. § 544. Since Alexander has failed to meet this difficult burden of proof, we will neither compel the Trustee to proceed with this Objection, nor allow Alexander to disrupt the administration of this case by pursuing it.

The claim of Alexander that the validity of the mortgage is placed in issue because the note underlying it is not artfully drafted has no merit whatsoever. A mortgage is "in form a conveyance of title," *Winthrop v. Arthur W. Binns, Inc.,* 160 Pa.Super. 214, 216, 50 A.2d 718, 719 (1947), which may be created even without *any* accompanying personal obligation or evidence of indebtedness of the mortgagor. *See, e.g., Girard Trust Co. v. City of Philadelphia,* 369 Pa. 499, 503, 87 A.2d 277, 279 (1952); [10] and *Hartje's Estate,* 345 Pa. 570, 574, 28 A.2d 908, 910 (1942). In fact, it is neces-

**10.** Alexander's citation of this case in support of *his* position is another of the instances where Alexander has cited a source which holds directly to the contrary by failing to note the language of the court which appears directly after that to which citation is made.

sary for the mortgagor to assert and establish fraud or duress on the part of the mortgagee, as opposed to a mere mistake on the part of the mortgagors, to invalidate a mortgage. *See In re Klutzaritz*, 46 B.R. 368, 369–70 (Bankr.E.D.Pa.1985) (per TWARDOWSKI, CH. J.); *First Mortgage Co. of Pennsylvania v. McCall*, 313 Pa.Super. 54, 59, 459 A.2d 406, 408–09 (1983); and *Edelstein v. Carole House Apts., Inc.*, 220 Pa.Super. 298, 303–05, 286 A.2d 658, 660–62 (1971). Clearly, no such elements are present here.

A more difficult issue is the validity of the extension of the mortgage to future advances. Alexander accurately cites *Western Pennsylvania Nat'l Bank v. Peoples Union Bank & Trust Co.*, 439 Pa. 304, 266 A.2d 773 (1970), as a potential basis for justifying an attack on the extension of Hoffman's mortgage to any amount except the face amount of the mortgage ($100,-000.00) "together with any incidental charges properly provided for in the mortgage," such as interest, *id.*, 439 Pa. at 308, 266 A.2d at 775, which, by our calculation, would total approximately $120,000.00, rather than the $141,000.00 designated by Hoffman as a secured claim in her Proof of Claim.

However, as the concurring opinion of Justice Pomeroy in *Western Pennsylvania* points out, the result in that case is a concession to the integrity of the recording statutes as a protection to secured creditors, which was rendered in the face of considerable precedent suggesting a conclusion to the contrary. Moreover, as the Court had pointed out over a hundred (100) years before, the purported public policy allowing reliance upon the accuracy of mortgages as recorded is always illusory, because "[n]o man deals in real estate on faith in the liens as recorded; for subsequent facts are continually changing their true character by payments and otherwise." *Moroney's Appeal*, 24 Pa. 372, 376 (1855). Hence, it can be argued that the party checking the records and finding a mortgage is on notice that the terms are uncertain, and has a duty of inquiry. In

any event, mortgages which failed to contain future advance clauses were, in cases decided prior to *Western Pennsylvania*, uniformly held valid as to future advances. *Land Title & Trust Co. v. Shoemaker*, 257 Pa. 213, 101 A. 335 (1917); and *Appeal of Lancaster Nat'l Bank*, 122 Pa. 31, 15 A. 697 (1888), and even in a case where the agreement that the mortgage cover future advance was solely oral in nature. *Wardman v. Iseman*, 99 Pa.Super. 551 (1930).

It is difficult, if not impossible, to reconcile these cases with the result in *Western Pennsylvania*. However, we do note that a common element in all of them was competing interests among secured creditors. The status of Alexander as a general, unsecured creditor raises a question, as Hoffman argues, as to whether, under state law, he would be entitled to contest the secured status of a mortgagee even under the holding in *Western Pennsylvania*. It must be recalled that, in *Western Pennsylvania*, the issue was whether a mortgagee with an undisclosed mortgage with respect to future advances "has a prior lien on the mortgaged property with respect to future advances against a *bona fide lien holder whose lien attaches after the future advances are made.*" (emphasis added). 439 Pa. at 306–07, 266 A.2d at 775. Alexander is no longer in the category underscored in the above quote.

In light of this observation, a query is raised as to what Alexander could practically accomplish in his challenge to the mortgage of Hoffman, since he has no junior lien which will be advanced if he succeeds in invalidating the mortgage in whole or in part. A hint is given in his initial Brief, to which he gratuitously attaches an appraisal of the Debtors' residence which clearly is *not* part of the record made via the Stipulation and which we cannot therefore consider. In the last paragraph of the Brief, referencing to the appraisal, Alexander suddenly switches his focus from an attack of Hoffman's lien to a claim that the residential mortgaged property of the

Debtors should be sold.[11] Needless to say, these inclusions are irrelevant to the issue at hand, as well as, per note 11, erroneous, and we may dismiss them as simply misplaced zeal of advocacy. However, they strongly suggest that the real aims of Alexander are to attempt to force a sale of the Debtors' premises and therefore to attempt to wrest the direction of administration of this estate out of the hands of the Trustee, who clearly has no such agenda. Moreover, given the fact that the Debtors' equity in the realty appears to us to be entirely exempt, the Trustee is apparently performing his duties properly, as well as to the general satisfaction of all other creditors, several of whom are larger than Alexander and have not raised similar objections to the Trustee's conduct. If indeed Alexander considered the Trustee an inappropriate appointee, his remedy was to attempt to form a Creditors' Committee and elect a Trustee, per 11 U.S.C. § 705(a), not to attempt to undermine the efforts of the duly-appointed Trustee.

These observations lead us to the determinations which we believe are crucial in this action. The Trustee has an obligation to perform his duties in the best interests of all of the creditors. The situation presented here is comparable to that of a creditor objecting to a trustee's application to settle a controversy, in which situation it is well-established that the objecting creditors may not substitute their judgment for that of the Trustee, but merely requires the Court " 'to see whether the settlement "fall[s] below the lowest point in the range of reasonableness." ' " *In re Carla Leather, Inc.,* 44 B.R. 457, 465–66 (Bankr.S.D.N.Y.1984) (quoting *In re W.T. Grant, Co.,* 699 F.2d 599, 608 (2d Cir.), *cert. denied sub nom. Cosoff v. Rodman,* 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983) (quoting, in turn, *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir.), *cert. denied sub*

*nom. Benson v. Newman,* 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972)). *See also In re Neshaminy Office Building Associates,* 62 B.R. 798, 803 (E.D.Pa.1986); and *In re Patel,* 43 B.R. 500, 504–05 (N.D. Ill.1984).

This conclusion is, moreover, consistent with the decision in *Fred Reuping, supra,* and the other cases cited at page 589 *supra,* all of which hold that the creditor can proceed to object to another creditor's claim only if the Trustee has *unreasonably or unjustifiably refused to do so.* This conclusion is also consistent with the *McKeesport* holding that creditors can act, despite the wording of 11 U.S.C. § 506(c), in issue in that case, or § 544, in issue here, only if the Trustee fails to act *without reason.*

Here, the Trustee is not failing to act without reason. He is vigorously pursuing several actions to avoid preferential transfers, including an action against Hoffman. An attempt to sell the realty does not appear to us to be a proper course of action. In any event, Alexander has certainly failed to meet his considerable burden of proving that substantial equity exists in the Debtors' premises which would justify a sale on the record before us. It is certainly open to considerable question whether the claims of Alexander have any substantive merit. It must be recalled that "[a] bankruptcy trustee is not bound to pursue every cause of action, and may properly decide that the speculative nature of the suit and the expense involved do not warrant prosecution." *In re Independent Clearing House Co.,* 41 B.R. 985, 992 n. 10 (Bankr.D. Utah 1984). The Trustee's choice not to prosecute the claim advanced by Alexander here seems totally warranted.

In light of our disposition, we shall enter the following Order, not only dismissing

---

11. We also note that the appraisal values the residence at $127,500.00. Since the "incidental charges" such as interest bring the amount of Hoffman's mortgage which is unquestionably valid, even under the reasoning of *Western Pennsylvania,* to a figure approaching $120,- 000.00, it is rather apparent that the Debtors' equity would be entirely exempt in any event. Alexander, in his calculation, fails to consider the addition of the "incidental charges" to the face amount of the mortgage of $100,000.00.

Alexander's Objection, but also making it clear that we intend to preclude any further attacks on Hoffman's claim which do not emanate from the Trustee.