Dated this 18 day of August 2000.

**In re Jose BARRIOS, Jr., and Lilliam Barrios, Debtors.**

**No. 00–33168–BKC–SHF.**

United States Bankruptcy Court, S.D. Florida.

Nov. 30, 2000.

Reggie David Sanger, Ft. Lauderdale, FL, for American Board of Family Practice.

James S. Caris, Hollywood, FL, for Chapter 13 Debtors.

## ORDER SUSTAINING AMERICAN BOARD OF FAMILY PRACTICE'S OBJECTION TO CONFIRMATION

STEVEN H. FRIEDMAN, Bankruptcy Judge.

THIS MATTER came on for hearing on November 7, 2000, on American Board of Family Practice's Objection to Confirmation. While the objection filed by American Board of Family Practice ("ABFP") lists several grounds for denying confirmation, the only argument raised at the November 7, 2000 hearing dealt with payments being made outside the plan by the Debtor to First Union National Bank ("First Union"). First Union holds a second mortgage lien on the Debtors' homestead property. The first mortgage lien on the property is held by the Bank of America, and the outstanding debt secured by the first mortgage exceeds the value of the collateral, leaving no value to secure the claim of First Union. ABFP contends that First Union's lien should be stripped and First Union's claim should be paid pro rata with the other unsecured claims under the Debtor's plan. The Debtor, while conceding that First Union's lien may be stripped, argues that AFBP lacks standing to force the Debtor to modify the lien of another creditor under 11 U.S.C. § 506(a).

### FACTS

The Debtors filed their Chapter 13 petition on July 19, 2000. On October 10, 2000, the Debtors filed their Second Amended Chapter 13 Plan. The only creditors that are treated under the Debtors' Second Amended Plan are the unsecured

nonpriority creditors. ABFP is an unsecured nonpriority creditor of the Debtors. According to the Debtors' Schedule F, ABFP holds a contingent claim for copyright infringement valued at $25,000.00. The claims of all of the creditors treated under the Debtors' plan, including the claim of ABFP, total $144,274.73. Pursuant to the proposed plan, the Debtors would pay the sum of $297.00 per month for 60 months. The Debtors' home is encumbered by two mortgages, which the Debtors intend to treat outside the Plan. The monthly mortgage payments are listed on Debtors' Schedule J as $1,741.51 for the first mortgage held by Bank of America, which is marginally undersecured, and $678.91 for the second mortgage held by First Union, which is completely unsecured.

ABFP argues that First Union's lien on the Debtors' home can be stripped pursuant to 11 U.S.C. § 506(a), allowing the claim to be treated as an unsecured claim under the Plan and adding $678.91 to the monthly plan payments for the benefit of all unsecured creditors. The Debtors counter by claiming that, although First Union's lien may be stripped, the Debtors are not required to lien strip. Furthermore, the Debtors contend that ABFP lacks the requisite standing to modify the lien of another creditor.

## DISCUSSION

Following the decision of *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), in which the Supreme Court held that 11 U.S.C. § 1322(b)(2) protects an undersecured homestead mortgage from lien stripping pursuant to 11 U.S.C. § 506(a), the Eleventh Circuit resolved the issue of whether an unsecured homestead mortgage is also protected by § 1322(b)(2). *See Tanner v. FirstPlus Financial, Inc. (In re Tanner)*, 217 F.3d 1357, 1357 (2000) ("In the wake of Nobelman ..., in which the Supreme Court held that the rights of an undersecured homestead lender are

protected from modification in Chapter 13 bankruptcy proceedings, we address whether this holding extends to wholly unsecured homestead lenders"). Adopting the majority view, the Eleventh Circuit chose to read both § 1322(b)(2) and § 506(a) in a way that gives effect to both. *See id.* at 1359. The pertinent part of section 1322(b)(2) provides: "the plan may—modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." Section 506(a) provides: "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim." While an undersecured homestead lien cannot be modified because § 1322(b)(2) prevents modification of claims secured only by a security interest in the debtor's homestead property, the Eleventh Circuit held that a wholly unsecured homestead lien would not be protected from modification under § 1322(b)(2) because to "extend the anti-modification clause to even wholly unsecured claims would vitiate the Nobelman Court's pronouncement that '[debtors] were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim.'" *See In re Tanner*, 217 F.3d at 1360; *accord In re Baez*, 244 B.R. 480, 485–86 (Bankr.S.D.Fla. 2000).

As the referenced Eleventh Circuit decision is binding upon this Court, the only question that remains is whether an unsecured creditor has standing to force the modification of the lien of another creditor. Section 506(a) provides no guidance in regard to standing. However, the Court finds the case of *Equitable Gas Co. v. Equibank N.A. (In re McKeesport Steel Castings Co.)*, 799 F.2d 91 (3d Cir.1986),

instructive on the issue. In *McKeesport,* a creditor moved for payment of post-petition gas service, which the bankruptcy court granted largely based on § 506(c). *See In re McKeesport Steel Castings Co.,* 799 F.2d at 93. The district court reversed the ruling of the bankruptcy court, partly due to its finding that only the trustee has standing to recover under § 506(c).[1] *See id.* In reversing the decision of the district court and affirming the decision of the bankruptcy court, the Court of Appeals found that the creditor had standing to bring a claim under § 506(c) because the creditor "had a colorable claim for expenses and was the only creditor that would zealously pursue that claim." *Id.* at 94.

While the *McKeesport* case is factually distinguishable from the instant case, it lends considerable support to the notion that ABFP has standing to force the modification of First Union's lien. The issue addressed in *McKeesport* involved § 506(c), a section that explicitly grants the power to recover under it to the trustee. In spite of the language of that Code section, the court found that a creditor, in lieu of the trustee, had standing to recover. Addressing the instant case, § 506(a) contains no such language specifying those who may seek modification under this Code section. As in *McKeesport,* ABFP has a sufficient interest at stake *sub judice,* and ABFP's objection clearly has merit as First Union's wholly unsecured homestead mortgage lien may be stripped off pursuant to § 506(a).

The case of *In re Morrison,* 69 B.R. 586 (Bankr.E.D.Pa.1987), also addressed the issue of standing. The court had to determine whether a general unsecured creditor had standing to object to the secured status of a secured creditor. *See In re Morrison,* 69 B.R. at 587. The court stated that "[u]nless the Code is clear in stating otherwise, we believe it just to accord any party expending the time and financial re-

sources to raise a claim the opportunity for a disposition on a less technical basis." *Id.* at 589. While the objection was dismissed for its lack of substantive merit, the court held that the creditor did have standing to pursue the objection. *See id.* at 590.

As in *Morrison,* ABFP has expended both time and financial resources to raise the instant objection. The objection should not be overruled solely on the basis of lack of standing, especially when ABFP has an interest at stake in this controversy and has actively pursued the protection of that interest. As there is no language contained in § 506(a) that restricts a party from taking action under it, ABFP, a general unsecured creditor, has standing to seek modification of the claim of First Union, another creditor, pursuant to § 506(a). Accordingly, it is hereby

**ORDERED** that—

1. American Board of Family Practice's Objection to Confirmation is sustained.

2. The Debtors shall modify First Union's lien pursuant to § 506(a) and modify their chapter 13 plan to include First Union as a general unsecured creditor and add the $678.91 to their monthly payments under the plan. The Debtors shall file and serve their Third Amended Chapter 13 Plan with seven (7) days from the date of the entry of this order, and the Court shall conduct a confirmation hearing to consider the Debtors' Third Amended Chapter 13 Plan on *Thursday, December 14, 2000, at 11:00 a.m., at the Paul G. Rogers Federal Building, 701 Clematis Street, Courtroom 6, Room 312, West Palm Beach, Florida.*

3. Failure to comply with this order will result in the denial of plan confirmation and dismissal of the case.

---

1. Section 506(c) provides: "[t]he trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim."